UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| ROBERT PRUITT, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CAPTAIN D'S LLC, )<br>)<br>Defendant. ) | 3:15-cv-00013-RLY-MPB |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Robert Pruitt, applied to be a General Manager at the Captain D's restaurant in Evansville, Indiana. After a strong first-round interview, he was allegedly assured by the Area Director that the job was all but his. Unfortunately, his next interview did not go as well. Following the second-round interview, the Area Director allegedly informed Plaintiff that he would not be hired because he mentioned God several times in his answers to questions. Plaintiff subsequently filed this suit alleging that Defendant, Captain D's LLC, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by refusing to hire him because of his religion, Christian. Defendant now moves for summary judgment, arguing that Plaintiff's claim fails as a matter of law because the position he applied for was not open. The court agrees and therefore **GRANTS** Defendant's Motion for Summary Judgment.

**I. Statement of Facts**

    **A. Defendant's Job Application Process**

Defendant solicits job applications using its website and yards signs posted at its restaurants. (Filing No. 30-7, Declaration of Kelly Donley[1] ¶ 35). The yard signs do not advertise for specific positions, but instead state, "NOW HIRING – Management & Crew – Apply at CaptainD'sJobs.com." (*Id.*). During the online application process, a General Manager applicant selects the restaurant at which he/she wishes to submit an application for employment. (*Id.* ¶ 7). The website does not list current job openings and does not limit applications to only those locations with vacancies. (*Id.*). In other words, applicants can submit an application to any restaurant at any time, regardless of whether a position is actually open at that location. (*Id.*).

    **B. Defendant's Evansville Restaurant**

Defendant has one restaurant in Evansville, Indiana; it is located at 1200 Covert Avenue. (Filing No. 30-5, Declaration of Andy Castle ¶ 6). Based on sales volume, the restaurant is staffed by no more than one General Manager. (*Id.* ¶ 10). On March 25, 2013, Yonnie Whorry was promoted from General Manager of the Evansville restaurant to Area Director for the Evansville/Middle Kentucky area, which includes the Evansville and Vincennes, Indiana restaurants. (*Id.* ¶ 6). Whorry reported to Andy Castle, Director

---

[1] Plaintiff objects to Donley's declaration on the basis that Donley allegedly lacks personal knowledge of what Defendant's hiring practices were in March 2013 (when Plaintiff applied) because she was not hired until April 2013. This argument is pure conjecture though. Plaintiff fails to provide any evidence that Defendant's hiring practices changed between March and April. The objection is therefore **OVERRULED**.

of Operations.[2] (*Id.* ¶ 7). Also on March 25, 2013, James Caldwell was promoted to General Manager of the Evansville restaurant to fill the vacancy left by Whorry. (Filing No. 30-6, Declaration of James Caldwell ¶ 6). At all times relevant to this litigation, Caldwell was in good standing with Defendant and had not requested a transfer to another restaurant. (*Id.* ¶ 9).

### C. Plaintiff Applies for a General Manager Position

On March 27, 2013, just two days after Caldwell had been promoted, Plaintiff submitted an electronic application for the position of General Manager at the restaurant in Evansville. (Donley Dec. ¶¶ 13-14; Filing No. 30-2, Plaintiff's Application at 4). The application did not ask for (and Plaintiff did not identify) his religion. (Donley Dec. ¶ 13; Plaintiff's Application). Plaintiff believed that a General Manager position was available at the Evansville restaurant because he saw a yard sign at the location. (Filing No. 30-1, Deposition of Plaintiff 147:23-148:4). Actually, Defendant's Vincennes restaurant was the only location in the area with a General Manager vacancy at the time of Plaintiff's application.[3] (Castle Dec. ¶ 8; Filing No. 30-4, Deposition of Yonnie Whorry 22:8-12).

---

[2] Plaintiff disputes this fact because there is a discrepancy as to when Castle actually began working as Director of Operations. Castle stated in his declaration that he has been employed as a Director of Operations since February 28, 2012. (Castle Dec. ¶ 4). However, a Personnel Change Notice form indicates that he was promoted from Area Director to Director of Operations on April 12, 2013. (*See* Filing No. 31-2 at 1). However, regardless of what date the promotion became official, there is no dispute that Castle was at least acting as Director of Operations when Plaintiff submitted his application. Further, a dispute over this fact does not preclude the court from entering summary judgment because the date of Castle's promotion is not a *material* fact. *See Fidlar Techs. v. LPS Real Estate Data Sols., Inc.*, 810 F.3d 1075, 1079 (7th Cir. 2016) ("A 'material fact' is one that affects the outcome of the suit.").
[3] Plaintiff disputes this fact based on the date. Castle testified that Whorry submitted a Personnel Change Notice on May 6, 2013, thereby informing human resources that Shambery Treece, the General Manager in Vincennes at the time, was going to transfer to the Evansville restaurant as a

3

### D. Whorry Conducts First-Round Interview with Plaintiff

On April 9, Whorry interviewed Plaintiff at the Evansville restaurant. (Plaintiff Dep. 84:10-17). During the interview, Whorry informed him that Caldwell was the General Manager of the Evansville restaurant. (*Id.* 90:15-21). Plaintiff testified that Whorry told him she wanted to transfer Caldwell to Vincennes and hire Plaintiff as General Manager in Evansville. (*Id.* 92:7-18). Whorry denies this, (Whorry Dep. 28:5-13, 29:9-30:11), but Castle claims Whorry later told him she discussed this idea with Plaintiff. (Castle Dep. 36:9-22). Plaintiff further testified that Whorry told him he had the job unless Castle "put[] up a red flag." (Plaintiff Dep. 94:7-9).

### E. Castle Conducts Second-Round Interview with Plaintiff

After the April 9 interview, Whorry informed Castle that Plaintiff was a candidate for the General Manager vacancy at the Vincennes restaurant. (Castle Dep. 19:1-6). On April 15, Castle and Whorry interviewed Plaintiff at the Evansville restaurant. (Plaintiff

---

Restaurant Manager (a position that is one step lower on the hierarchy than General Manager). (Filing No. 30-3, Deposition of Andy Castle 51:19-25; Castle Dec. ¶ 11). Treece's impending transfer to Evansville created the open position in Vincennes. Plaintiff takes issue with the timeline because the official notice of the transfer was allegedly filed after he applied and interviewed. Therefore, there actually was not an open position in Vincennes at the time of Plaintiff's application, or so he seems to argue. Yet, Plaintiff's dispute makes little sense and contradicts his own theory. As Defendant notes, it is undisputed that Treece was transferring to Evansville as a Restaurant Manager. It is reasonable to assume that people knew it was going to occur before it became official. If Whorry and Castle were truly oblivious to the fact that Treece was planning to transfer in March/April, Whorry would not have crafted the alleged plan to move Caldwell to Vincennes and hire Plaintiff for Evansville. There would have been no vacancy to fill in Vincennes. Additionally, Castle testified inconsistently as to the date of Treece's transfer paperwork. (*See* Castle Dep. 50:22-51:2 (Q: "And so the reason [Treece] was going to transfer from Vincennes to Evansville – I believe had been approved to transfer from Vincennes to Evansville at the time Mr. Pruitt interviewed, was an impending birth, is that correct, of her child?" A: "That's correct.").

4

Dep. 106:5-12). Castle thought he was interviewing Plaintiff for the General Manager opening in Vincennes. (Castle Dep. 19:1-6, 20:25-21:15, 36:4-8).

Castle, also a Christian, did not ask Plaintiff about his religion or religious beliefs. (Castle Dec. ¶¶ 3, 9). Near the end of the interview, Castle asked Plaintiff to describe a time when he had lifted up a co-worker. (Plaintiff Dep. 109:18-20). Plaintiff discussed an instance when he talked with a co-worker at McDonald's who had been kicked out of his home and had nowhere to go. (*Id.* 109:22-110:13). Plaintiff counseled the co-worker by stating that, during times of trouble, he personally called on the Lord. (*Id.* 110:15-17). Plaintiff told the employee, "I'm going to pray for you that God will send somebody by to let you come in their house tonight and stay until you can get yourself situated." (*Id.* 110:17-20).

### F. Defendant Rejects Plaintiff's Application for Employment

Following the April 15 interview, Castle and Whorry discussed Plaintiff's prospects for employment. (Castle Dep. 24:6-25:4). Castle testified that at this point Whorry indicated, for the first time, that she wanted to transfer Caldwell to Vincennes and hire Plaintiff for the Evansville location. (*Id.* 21:9-23, 24:6-11). Castle told Whorry that it was not fair "to ask a general manager in good standing to relocate to a restaurant that was an hour from home for him." (*Id.* 37:1-4). Additionally, Castle believed that Plaintiff was not qualified for a General Manager position based on his lack of experience in management and the food services industry. (*Id.* 37:7-14; Castle Dec. ¶ 18). On April 17, Defendant sent Plaintiff a form e-mail rejecting his application. (Donley Dec. ¶ 31).

5

### G. Castle Discusses Interview with Plaintiff

On or about April 18, Plaintiff called Castle and stated, "Yonnie called and told me that the reason why I didn't get the job is because you said I mentioned God several times during our interview and that it raised an issue for you and you thought it would be an issue for HR." (Plaintiff Dep. 129:8-12). Castle said he would talk to Whorry and then call Plaintiff back. (*Id.* 129:13-15). Castle later told Plaintiff that he did not get a General Manager position at the Evansville restaurant because there was no General Manager position available at that restaurant. (*Id.* 134:13-25). Nonetheless, Castle invited Plaintiff to stay in touch regarding future openings at the Evansville location. (*Id.* 135:17-22).

## II. Legal Standard

The court is required to enter summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[S]ummary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.'" *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)). The court construes the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

**III. Discussion**

Title VII makes it unlawful for an employer "to fail or refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It is well established that there are two ways in which a plaintiff may prove a claim under Title VII, namely the direct method and the indirect, burden-shifting method. *See e.g., Jaburek v. Foxx*, 813 F.3d 626, 631 (7th Cir. 2016). Importantly though, "[w]hether the plaintiff proceeds by the direct or indirect method of proof, he must show a materially adverse employment action." *Rhodes v. Ill. DOT*, 359 F.3d 498, 504 (7th Cir. 2004). Defendant claims that summary judgment is required because Plaintiff cannot satisfy this element of the *prima facie* case.

In a failure-to-hire case, the plaintiff satisfies the adverse employment action requirement by showing that an employer had a vacancy but refused to hire him for the position. As the Seventh Circuit explained, "To proceed on a refusal-to-hire claim, a plaintiff must at a minimum establish that she suffered some adverse employment action, namely, that she was passed over for a job. When no job exists, the plaintiff cannot be said to have suffered any adverse employment action." *Wilson v. Cook Cty.*, 742 F.3d 775, 784 (7th Cir. 2014) (citations omitted). *See Jones v. City of Springfield*, 554 F.3d 669, 673 (7th Cir. 2009) ("The lack of an opening is always a legitimate reason for refusing to hire or promote."); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1118 (7th Cir. 1992) ("[I]t would appear not to be discriminatory if the employer is not hiring anybody, for example, if there is no vacancy to be filled, and that would normally be the end of a Title VII claim.").

7

Here, Plaintiff has failed to prove that he applied for an *open* position. Indeed, the undisputed facts show that Plaintiff applied for a position that had already been filled. When he submitted his application online, he did not indicate an interest in any available position or even the General Manager position at any available restaurant. Rather, Plaintiff narrowly applied to be the General Manager at Defendant's Evansville location. Defendant had promoted Caldwell to be the General Manager in Evansville just two days prior to Plaintiff applying though. Further, at all times relevant, Caldwell was in good standing with Defendant and had not requested to transfer. Therefore, the position Plaintiff applied for was not open.

This begs the question why Defendant interviewed Plaintiff at all. While there is a genuine dispute of fact as to this question, that fact is not *material*. Either Plaintiff was being considered for a position at the Vincennes location or Whorry was considering transferring Caldwell to Vincennes and hiring Plaintiff to replace him at the Evansville location. Regardless of which theory the court credits, the fact remains that there was not an open position at the Evansville restaurant when Plaintiff applied. Showing that Whorry wanted to create an opening at the Evansville location is not the same as proving that there was an actual opening. *See Jones*, 554 F.3d at 673 ("Jones has presented evidence showing that an open position *could* have been created for him, but he simply has not presented enough evidence from which a jury could find that an open position actually existed. For that reason, he cannot make a prima facie case of discrimination.") (emphasis original).

Defendant advanced the lack of an adverse employment action as its primary basis for summary judgment, but Plaintiff made no attempt to refute the argument. He has therefore waived this issue *en toto*. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Notwithstanding the waiver, the court finds that Plaintiff cannot show he suffered an adverse employment action. That finding is dispositive of his only claim. Summary judgment for Defendant is required.

### IV. Conclusion

Therefore, Defendant's Motion for Summary Judgment (Filing No. 28) is **GRANTED**.

**SO ORDERED** this 24th day of May 2016.

                                            RICHARD L. YOUNG, CHIEF JUDGE
                                            United States District Court
                                            Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.